UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TESSERON, LTD., | : | Case No. 1:04cv2182 |
| | : | |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| GMC SOFTWARE, *et al.*, | : | OPINION AND ORDER |
| | : | |
| Defendants. | : | |

This action was filed on November 1, 2004.  In it, Tesseron Ltd. ("Tesseron") contends that

GMC Software Technology, Inc. ("GMC") has infringed a number of Tesseron-owned patents through

the use and marketing of GMC's PrintNet software.  The patents-in-suit are U.S. Patent Nos. 5,937,153

("the '153 patent"), 6,209,010 ("the '010 patent"), 6,301,028 ("the '028 patent"), 6,599,325 ("the '325

patent"), 6,687,016 ("the '016 patent"), and 6,771,387 ("the '387 patent").  In response to Tesseron's

Complaint, GMC denied that its PrintNet software infringes Tesseron's patents, asserted a number of

affirmative defenses, including assertions that one or more of Tesseron's patents are invalid, and filed

a counterclaim, seeking, among other things, a declaration that the patents are unenforceable as a result

of inequitable conduct, which allegedly occurred during the prosecution of those patents.[1]

---

[1]     While GMC also appears to assert that the alleged inequitable conduct renders the patents invalid, that is a mis-statement of the law, albeit a fairly common one. The issue presented by an inequitable conduct claim is one of enforceablity, not validity.

Tesseron moved to dismiss GMC's inequitable conduct claims on grounds that those claims had not been plead with the particularly required under Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, Tesseron pointed out that GMC had not specified the nature of the alleged inequitable conduct, who had engaged in such conduct, when such conduct occurred, or which patents allegedly were infected by that conduct. The Court agreed with Tesseron that the allegations of inequitable conduct were too vague and conclusory to be maintained in their then-current posture and ordered GMC either to amend its affirmative defenses and counterclaim to state its inequitable conduct claims with greater particularity, or to dismiss those claims and defenses.

In response to the Court's order, on May 6, 2005, GMC filed an Amended Answer and Counterclaim. In those pleadings, GMC continues to assert that the patents-in-suit are unenforceable because Tesseron allegedly engaged in inequitable conduct during the prosecution of those patents. Specifically, GMC asserts that Tesseron, through its owner-inventor and its long-time patent counsel, prosecuted the patents-in-suit with full knowledge that, in the course of those prosecutions, they failed to disclose the existence of two of Tesseron's own patents – U.S. Patent Nos. 5,740,338 (the '338 patent) and 5,465,165 (the '165 patent). GMC asserts that, because one or both of these patents are material prior art to each of the patents-in-suit, Tesseron's knowing failure to disclose them to the United States Patent and Trademark Office (the "PTO") constitutes inequitable conduct that renders the patents unenforceable.

In response to GMC's attempt to re-plead its inequitable conduct defense and counterclaim, Tesseron again filed a Motion to Dismiss. Again, Tesseron asserts that GMC has failed to plead inequitable conduct with the level of particularity to which such claims are, and rightfully should be, subjected under the law.

The Court agrees with all of Tesseron's basic assertions regarding inequitable conduct claims – (1) that the patent bar is too quick to resort to the assertion of such claims, even where unwarranted by the facts, (2) that allowing such claims to be asserted without early scrutiny by the Court is dangerous because they often are asserted for improper strategic purposes (such as delay and intimidation), (3) that the burden of proof in connection with such claims should be demanding, and (4) that inequitable conduct claims should be subjected to the heightened pleading standards of Rule 9(b) because they allege fraud on the PTO.   The Court does not agree, however, that resort to those principles justifies dismissal of the inequitable conduct claims asserted here, at least not on the present record.

Tesseron first asserts that the "who, what and where" requirements of Rule 9(b) have not been satisfied because GMC does not describe the precise details of the fraud it claims to have occurred. There are two types of inequitable conduct claims, however. The first involves knowing, material misrepresentations to the PTO.  The second involves the failure to disclose material information to the PTO.  Where, as here, the second type of inequitable conduct is alleged, the "who, what and where" requirements of Rule 9(b) generally are covered by a description of those involved in the patent prosecution process and the nature of what an alleged infringer asserts should have been disclosed during that process.  GMC asserts that two <u>specific</u> patents are material prior art to the patents-in-suit, that Tesseron and its counsel were aware of that prior art, and that they knowingly failed to disclose it to the PTO.   Those allegations are clearly sufficient to sustain an inequitable conduct claim premised on the failure to disclose prior art at this stage of the proceedings.  *See, e.g., Ferring v. Aventis Pharmaceuticals, Inc. v. Barr Laboratories, Inc.*, __ F3d __, 2006 W.L. 335601 (Fed. Circ. Feb 15, 2006) (inequitable conduct claim requires showing that (1) there was a failure to supply material

3

information, (2) the applicant knew of the information, (3) the applicant knew or should have known it was material, and, (4) the applicant has not provided a credible explanation for withholding that information.

Tesseron next argues that the inequitable conduct claims should be dismissed because the '338 and '165 patents, while prior in time to the patents-in-suit, are not "material prior art" under the law, hence relieving Tesseron of any obligation to disclose them. Tesseron does not proffer any expert testimony or evidence in support of this proposition, but says the Court can reach this determination from the "face of the allegations" in the counterclaim, presumably by referring to the face of the '338 and '165 patents and comparing the art described there to the art practiced in the patents-in-suit. As GMC points out, however, materiality is a question of fact. While that question of fact may ultimately be resolvable short of trial (perhaps because no reasonable fact-finder could conclude that the '338 and '165 patents are material), the Court declines Tesseron's invitation to attempt to resolve it with no evidence on that issue at all.[2]

Tesseron finally asserts that, because the '338 patent was considered by the examiner in connection with one of the patents-in-suit (the '028 patent), Tesseron had no obligation to disclose the '338 patent in connection with any other patents in the same "family" – i.e., any divisional or continuing applications thereof. Even if Tesseron is correct on this issue, however, questions regarding disclosures as to the other patents-in-suit, and as to the '165 patent as alleged prior art to all of the patents-in-suit, would still remain. Thus, the Court declines to resolve the parties' debates regarding the legal

_____

[2]     The Court is particularly disinclined to do so, moreover, where GMC has alleged that one PTO examiner cited the '338 patent as pertinent prior art to at least one of the patents-in-suit, an allegation which Tesseron, though it attempts to explain, does not dispute.

distinction between inequitable conduct claims premised on a failure to disclose allegedly pertinent prior art and allegations of "infectious enforceability" at this early stage of the proceedings.

The Court finds that GMC's allegations of inequitable conduct, either in the form of an affirmative defense or counterclaim of invalidity are sufficient to survive Tesseron's motion to dismiss. The Court notes, moreover, that where, as here, claims of inequitable conduct are premised solely on allegations of a failure to disclose material prior art and, thus mirror affirmative defenses and counterclaims of invalidity on obviousness grounds, concerns regarding undue delay arising from the mere assertion of those inequitable conduct claims in large measure, are obviated.

For all of these reasons, Tesseron's Motion to Dismiss GMC's Amended Counterclaim of Invalidity and/or Unenforceability Based on Inequitable Conduct (Doc. 29) is **DENIED.**

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  March 30, 2006**